

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00406-CV

_____

GRCDALLASHOMES LLC AND KAZEM DANESHMANDI, Appellants

V.

JOHN CALDWELL, Appellee

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. 17-10604-442

Before Birdwell, Bassel, and Wallach, JJ.
Opinion by Justice Birdwell

## OPINION

Appellants Kazem Daneshmandi and his company GRCDallasHomes LLC (collectively GRC) challenge a money judgment in favor of appellee John Caldwell. We affirm.

## I.    BACKGROUND

GRC was in the business of flipping houses. In 2015, Caldwell agreed to loan GRC $317,000 for purposes of a house-flipping project at 7413 Waters Edge in The Colony, Texas. GRC executed a promissory note in Caldwell's favor, which was purportedly secured by the Waters Edge property. According to the note, GRC would handle renovations, and the two sides would split profits for the deal pursuant to a formula. The note provided that GRC would repay the principle in July 2016 and that in the event of a default, Caldwell "shall retain property as payment."

However, within a week, the Waters Edge deal was abandoned, and they agreed to use Caldwell's money to invest in two other properties instead. By 2016, those properties had sold for nearly $330,000. In February 2016, Caldwell asked for an update; in June, GRC reported that it had $363,000 in principle and profit for Caldwell, but Caldwell did not request his money back. Instead, he allowed GRC to hold and reinvest the funds in other projects.

Caldwell inquired about his money in early 2017. In June 2017, he loaned GRC an additional $200,000, and in August, GRC reported that the $200,000 would be repaid with interest. By October 2017, Caldwell began demanding all his money back. GRC

2

reported that the money was gone, spent on paying employees, buying products, and paying bills. GRC offered to give Caldwell various properties to satisfy the debt, but Caldwell declined and filed suit against GRC. GRC counterclaimed for, among other things, a declaratory judgment that the note was nonrecourse in light of the clause which provided that Caldwell "shall retain property as payment" in the event of default, such that Caldwell's only remedy was to take the Waters Edge property to satisfy any judgment debt.

At trial, the jury found that GRC had an agreement with Caldwell but did not breach it. However, the jury found that GRC held $563,000 that in equity and good conscience belonged to Caldwell. Based on this verdict, the trial court rendered judgment in Caldwell's favor for money had and received. The trial court ruled that GRC's declaratory-judgment claim was moot in light of the jury's verdict. GRC appeals.

## II. DISCUSSION

### A. This court should render a declaratory judgment.

In its first issue, GRC argues that when a declaratory judgment is sought by a party's pleadings, the trial court is required to render a declaratory judgment. GRC maintains that because it pleaded for a declaratory judgment, the trial court erred in failing to enter one. GRC's prayer is for this court to grant declaratory relief.

"Texas courts uniformly hold that a declaratory judgment need only serve a useful purpose in resolving the dispute." *Shahin v. Mem'l Hermann Health Sys.*, 527 S.W.3d 484, 490 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (cleaned up). A

3

trial court has limited discretion to refuse a declaratory judgment and generally may do so only where judgment would not remove the uncertainty giving rise to the proceedings or where there is no justiciable controversy.[1] *See Bollner v. Plastics Sols. of Tex., Inc.*, 270 S.W.3d 157, 170 (Tex. App.—El Paso 2008, no pet.); *Reynolds v. Sw. Bell Tel., L.P.*, No. 2-05-356-CV, 2006 WL 1791606, at *8 (Tex. App.—Fort Worth June 29, 2006, pet. denied) (mem. op.) (Walker, J., dissenting); *SpawGlass Constr. Corp. v. City of Houston*, 974 S.W.2d 876, 878–79 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Scurlock Permian Corp. v. Brazos Cty.*, 869 S.W.2d 478, 486 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *see also Tall Timbers Corp. v. Anderson*, 370 S.W.2d 214, 217 (Tex. App.—Fort Worth 1963), *rev'd on other grounds*, 378 S.W.2d 16 (Tex. 1964). We have a duty to render the declaratory judgment that the trial court should have rendered. *Trinity Universal Ins. v. Sweatt*, 978 S.W.2d 267, 271 (Tex. App.—Fort Worth 1998, no pet.) (citing *Scurlock*, 869 S.W.2d at 488–89); *see Tall Timbers*, 370 S.W.2d at 217.

We sustain GRC's first issue. The next question is what declarations we should render.[2]

---

[1]*See also In re Hous. Specialty Ins.*, 569 S.W.3d 138, 140–41 (Tex. 2019) (orig. proceeding) (per curiam) (explaining that a trial court also has discretion to refuse a declaratory judgment when it would simply declare the nonliability of a potential defendant in a tort action).

[2]To the extent that GRC sought a declaration that "the Note does not give rise to a partnership," the jury determined at trial that GRC and Caldwell did not have a partnership. Thus, we decline to render such a declaration because it would not resolve any uncertainty between the parties. *See Bollner*, 270 S.W.3d at 170.

**B.    The note does not reflect a nonrecourse loan or an exclusive remedy.**

In its second issue, GRC submits that we should render declarations that the note was a nonrecourse loan and that GRC therefore had no liability on the note. As GRC observes, the note purports to be secured by the deed for the Waters Edge property and provides that if GRC defaulted on the note, then Caldwell "shall retain property as payment." GRC contends that the word "property" must refer to the Waters Edge property since it is the only property mentioned in the note. According to GRC, the effect of this clause is that Caldwell's only remedy for any suit arising from the note is to retain the Waters Edge property as sole satisfaction for any judgment debt.

But the note says that Caldwell "shall retain property," not "the property at 7413 Waters Edge" or even "the property," and thus it is not clear what property Caldwell would be retaining as payment. Moreover, there was evidence at trial that GRC did not own the Waters Edge property when the note was executed, which casts doubt on GRC's ability to grant a security interest in the property. *See* Tex. Bus. & Com. Code Ann. § 9.203(b).

Even setting those complications aside, we must disagree that the clause in question limits Caldwell's recourse. As we explain, the clause providing that Caldwell "shall retain property as payment" does not mean either that the note was nonrecourse or that retaining the Waters Edge property was Caldwell's exclusive remedy.

5

"A nonrecourse note has the effect of making a note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note." *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 917 (Tex. 2015) (quoting *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)). "[U]nder a nonrecourse note, the maker does not personally guarantee repayment of the note and will, thus, have no personal liability." *Fein*, 68 S.W.3d at 266. If the maker of a nonrecourse note elects not to repay the note, he is not exposed to any personal liability, but he instead takes the risk that the collateral securing the note will be lost if the noteholder decides to enforce its security interest in the collateral. *Id.*

A closely related family of contractual terms are those that provide exclusive remedies, limiting one party's recourse against another to certain forms of relief. *See Vandergriff Chevrolet Co. v. Forum Bank*, 613 S.W.2d 68, 70–71 (Tex. App.—Fort Worth 1981, no writ) (describing a contract "without recourse" as a contract with an "exclusive remedy"). "Remedies provided for in a contract may be permissive or exclusive." *Id.* at 70. "The mere fact that the contract provides a party with a particular remedy does not, of course, necessarily mean that such remedy is exclusive." *Id.*; *accord Morath v. Cano*, No. 03-15-00799-CV, 2017 WL 3585252, at *4 n.18 (Tex. App.—Austin Aug. 17, 2017, no pet.) (mem. op.) (quoting *Pelto Oil Co. v. CSX Oil & Gas Corp.*, 804 S.W.2d 583, 586 (Tex. App.—Houston [1st Dist.] 1991, writ denied)). "A construction [that] renders the specified remedy exclusive should not be made unless the intent of the parties that it be exclusive is clearly indicated or declared." *Vandergriff Chevrolet*, 613

6

S.W.2d at 70; *accord Morath*, 2017 WL 3585252, at *4 n.18; *Allen v. King*, No. 12-03-00140-CV, 2004 WL 252097, at *2 (Tex. App.—Tyler Feb. 11, 2004, no pet.) (mem. op.); *see also* Robin Russell, 2 Tex. Prac. Guide Fin. Trans. § 8:62, Nonrecourse language ("In order for a promissory note to be nonrecourse[,] it must contain specific language to that effect.").

An intent to provide an exclusive remedy may be clearly indicated with terms stating that the remedy is the "only,"[3] "sole,"[4] or "sole and exclusive" remedy.[5] Or, in the case of nonrecourse loans, the contract might accomplish a similar effect by providing that a party "shall look solely to" a given source of payment to satisfy the

---

[3] *See, e.g.*, *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners L.P.*, 146 S.W.3d 79, 98, 101 (Tex. 2004).

[4] *See, e.g.*, *Myriad Dev., Inc. v. Alltech, Inc.*, 817 F.Supp.2d 946, 966 (W.D. Tex. 2011).

[5] *See, e.g.*, *Crow-Billingsley Stover Creek, Ltd. v. McKinney Partners, L.P.*, No. 05-09-00962-CV, 2011 WL 3278520, at *7–8 (Tex. App.—Dallas Aug. 2, 2011, no pet.) (mem. op.); *Fawcett, Ltd. v. Idaho N. & Pac. R.R. Co.*, 293 S.W.3d 240, 248–49 (Tex. App.—Eastland 2009, pet. denied) (op. on reh'g).

7

debt,[6] that the party's "sole"[7] or "only recourse"[8] is a given source of payment, or that a party shall have no "personal liability" on the note.[9]

In the absence of such limiting terms or some other language which displaces the remedies that might otherwise be available, courts uniformly hold that a party may pursue any remedy that the law affords in addition to the remedies provided in the contract. *See Morath*, 2017 WL 3585252, at *4; *Ganske v. WRS Grp., Inc.*, No. 10-06-00050-CV, 2007 WL 1147357, at *4 (Tex. App.—Waco Apr. 18, 2007, no pet.) (mem. op.); *Allen*, 2004 WL 252097, at *2; *Bifano v. Young*, 665 S.W.2d 536, 539 (Tex. App.—Corpus Christi–Edinburg 1983, writ ref'd n.r.e.).

For instance, in *Tabor v. Ragle*, a real estate contract included a remedy-related clause similar to the one we consider today: "Should the Purchaser fail to consummate this contract as specified for any reason, except title defects, Seller *shall* have the right to *retain* said cash deposits as liquidated damages for the breach of this contract." 526

---

[6] *See, e.g.*, *Messagephone, Inc. v. Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n*, 966 S.W.2d 133, 135 (Tex. App.—Austin 1998, no pet.) (op. on reh'g); *Vista Dev. Joint Venture II v. Pac. Mut. Life Ins. Co.*, 822 S.W.2d 305, 306 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Schultz v. Weaver*, 780 S.W.2d 323, 325 (Tex. App.—Austin 1989, no writ).

[7] *Tsai v. Su*, No. 01-09-00096-CV, 2010 WL 3294235, at *2, *5 (Tex. App.—Houston [1st Dist.] Aug. 19, 2010, pet. denied) (mem. op.).

[8] *Pineridge Assocs., L.P. v. Ridgepine, LLC*, 337 S.W.3d 461, 464 (Tex. App.—Fort Worth 2011, no pet.).

[9] *See, e.g.*, *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 917 (Tex. 2015); *Pineridge Assocs.*, 337 S.W.3d at 464; *Schultz*, 780 S.W.2d at 325.

S.W.2d 670, 675 (Tex. App.—Fort Worth 1975, writ ref'd n.r.e.) (emphasis added). We noted that in the event of a breach, "a party to a contract can pursue any remedy which the law affords in addition to the remedy provided in the contract, unless the contract declares the remedy to be exclusive." *Id.* at 676. But we held that there was nothing about the clause in question that limited the seller's otherwise-available remedies. *Id.*

Likewise, the phrase in question here—that Caldwell "shall retain property as payment"—lacks any indication that this solution is Caldwell's only, sole, or exclusive remedy, that Caldwell has no other recourse, that Caldwell shall look solely to the property for payment, or that GRC is not otherwise liable on the note. In the absence of any limiting language, we cannot agree that the note is nonrecourse or exclusive in its remedies. *See id.* There is nothing about this clause that bars Caldwell from pursuing any form of liability that law or contract might provide against GRC. Thus, if there is to be a declaration, it must be that the note did not reflect a nonrecourse arrangement, that retaining the Waters Edge property was not Caldwell's exclusive remedy, and that this provision did not preclude liability against GRC.

We therefore resolve GRC's second issue in Caldwell's favor.

**C.     The note does not unambiguously address the subject of Caldwell's suit, and thus GRC was required to obtain a jury question on whether an express contract barred an equitable recovery.**

In its third issue, GRC advances another reason why Caldwell should not be able to recover. GRC notes the well-established rule that when a written agreement between the parties already addresses the subject matter of an equitable claim, recovery under an

9

equitable theory is generally impermissible. According to GRC, the note covers the subject matter of Caldwell's claim for money had and received, and Caldwell is therefore barred from recovering under that equitable theory.

A claim for money had and received is equitable in nature. *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 161 n.1 (Tex. 2007) (per curiam). "[W]hen a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 50 (Tex. 2008) (op. on reh'g) (quoting *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)); *see also Sister Initiative, LLC v. Broughton Maint. Ass'n, Inc.*, No. 02-19-00102-CV, 2020 WL 726785, at *28 (Tex. App.—Fort Worth Feb. 13, 2020, pet. denied) (mem. op.) (implying that this rule applies to a claim for money had and received).[10] "It has long been the law, however, that 'where an adequate and complete remedy at law is provided, our courts, though clothed with equitable jurisdiction, will not grant equitable relief.'" *Power v. GSE Consulting, LP*, No. 02-16-00175-CV, 2017 WL 2686324, at *3 (Tex. App.—Fort Worth June 22, 2017, no pet.) (mem. op.) (quoting *Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891, 894 (Tex.

---

[10]*But see City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ) ("An action for money had and received may be founded upon an express agreement . . . ."); *Hewlett-Packard Co. v. Benchmark Elecs., Inc.*, 142 S.W.3d 554, 565 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (similar); *but see also Burrus v. Reyes*, 516 S.W.3d 170, 197–98 (Tex. App.—El Paso 2017, pet. denied) (upholding, on a theory of money had and received, a recovery for profits from the sale of property, even though the court determined "that the parties had an enforceable contract" regarding that sale).

10

1937)). "When a written contract unambiguously covers the subject matter of the parties' dispute, 'there is no issue for the jury to decide'; the express-contract rule bars recovery in [equity] as a matter of law." *Id.* (cleaned up) (quoting *Fortune Prod.*, 52 S.W.3d at 683).

But when it is not clear that as a matter of law the contract's terms cover the subject of an equitable claim, "it is incumbent on the party disputing that claim to secure findings from the trial court that an express contract exists that covers the subject matter of the dispute." *See Fortune Prod.*, 52 S.W.3d at 685. A party who fails to secure such a finding risks waiving the affirmative defense of express contract. *See id.* at 683, 685.

*Fortune Production* offers guidance on how this rule should be applied, and that guidance is instructive here. The *Fortune Production* court observed that certain parties had an express contract which provided a comprehensive pricing scheme for "the entire stream of gas produced by those plaintiffs' wells." *Id.* at 684. The subject matter of those plaintiffs' claims was a certain subset of gas products that were "a part of that" broader gas stream. *Id.* Because the contract covered the entire gas stream, including that subset, the contract thus enveloped the issues that were the subject of those plaintiffs' equitable claims. *See id.* And given the unambiguous contract and the undisputed facts of the parties' performance, the *Fortune Production* court concluded that as a matter of law the express-contract defense barred any recovery in equity. *Id.* at 683.

11

However, the court reached a different conclusion as to another set of plaintiffs. Early on, this second set of plaintiffs had express, written contracts with the defendant Conoco, but after those contracts expired, the plaintiffs nonetheless continued to deliver gas to Conoco based on an informal understanding. *Id.* at 674–75. Because there were no written documents to show whether these later-stage transactions were covered by the terms of a contract, the court held that Conoco should have obtained a jury question to establish its express-contract defense. *Id.* at 685. Conoco did not do so, and it therefore waived the defense. *Id.*

Here, GRC asserts that the written note expressly covered the subject of Caldwell's equitable claims. However, the parties' actual dealings—and the subject of Caldwell's suit—better resembles the later-stage transactions in *Fortune Production* for which there was no express contract. The parties' written contract here covered only the earliest phase of their dealings. The note revolved around the Waters Edge deal, but the parties almost immediately abandoned that deal and instead entered waters that were uncharted by the note: they invested the money in other properties not mentioned by the note; reaped profits from those properties (the allotment of which was not discussed in the note); ignored the note's repayment date in hopes of finding still other properties to invest in; and invested in other properties and engaged in over $200,000 of additional loan transactions, none of which was contemplated by the note. If those dealings were structured by anything at all, it was by a set of informal text messages—much like the informal understandings that governed the later-stage transactions in

12

*Fortune Production*.  Because the parties immediately broke from the plan envisioned by the note and instead engaged in a free-wheeling series of transactions, and because those transactions appear to be the subject of Caldwell's claim for money had and received, the note does not unambiguously address the matter at issue.  GRC was therefore required to obtain a jury finding on whether an express contract covered the transactions.  GRC did not obtain such a finding.  It therefore waived its express-contract defense to Caldwell's equitable claim for money had and received.

We overrule GRC's third issue.

**D.    Sufficiency of the Evidence**

In its fourth issue, GRC purports to challenge the sufficiency of the evidence to support the jury's award of $563,000 in damages.  However, the issue proceeds in two parts, and neither of those parts actually contests the sufficiency of the evidence on damages.  And in its reply brief, GRC disclaims any intent to challenge the sufficiency of the evidence on damages.

Rather, the two parts of GRC's last issue narrowly challenge the legal bounds of a claim for money had and received.  First, GRC contends that the evidence is insufficient because an express contract covers the subject matter of Caldwell's claim for money had and received, barring recovery under that equitable theory.  This legal argument simply restates GRC's previous position concerning its express-contract defense, and we have held that GRC waived that defense.  This contention is therefore unavailing.

13

Second, GRC contends that lost profits are, as a matter of law, unavailable under a claim of money had and received. As GRC notes, the figure that the jury awarded—$563,000—corresponds with Caldwell's evidence that he had loaned GRC $517,000 and that he was owed profits of $46,000, for a total of $563,000. Thus, to the extent that the jury implicitly awarded Caldwell $46,000 for lost profits, GRC contends the award is legally insupportable.

As its sole support for the notion that profits are unavailable under a claim for money had and received, GRC relies on a general proposition: "Money had and received is a category of general assumpsit to restore money where equity and good conscience require *refund*." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (emphasis added) (quoting *MGA Ins. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.)). GRC reasons that lost profits cannot be a "refund" because it is not returning money that Caldwell had previously provided.

GRC's argument cuts against precedent dating back to the 1800s that has endorsed the potential availability of profits on a theory of money had and received. *See, e.g.*, *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951); *Burrus v. Reyes*, 516 S.W.3d 170, 197–98 (Tex. App.—El Paso 2017, pet. denied); *Tri-State Chems., Inc. v. W. Organics, Inc.*, 83 S.W.3d 189, 192–95 (Tex. App.—Amarillo 2002, pet. denied); *Lovejoy v. Kaufman*, 41 S.W. 507, 507–08 (Tex. App.—San Antonio 1897, no writ). Similarly, we have recognized that money had and received belongs to the same genus as unjust

14

enrichment, *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.), and unjust enrichment offers "profit-based" remedies as well.[11] *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1943 (2020) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 51, cmt. a (2010)).

GRC's argument also runs counter to the nature of the cause of action, which is generally free of the sort of strictures that GRC asks us to impose: "a cause of action for money had and received is 'less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case[] and looks solely to the inquiry [of] whether the defendant holds money [that] belongs to the plaintiff.'" *Staats*, 243 S.W.2d at 687–88 (cleaned up) (quoting *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 402–03, 54 S. Ct. 443, 449 (1934)); *Ardinger*, 369 S.W.3d at 507. The action's elements are defined in open terms: "To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *Plains Expl.*, 473 S.W.3d at 302 n.4. And the action implicates a permissive standard of review under which we afford the trial court "broad discretion in balancing the equities" of the case. *Ardinger*, 369 S.W.3d at 507. GRC would have us erect barriers where courts have very consciously avoided placing them, but GRC has not provided us a reason for doing so other than its reaching interpretation of the word "refund" as it is used in some opinions.

---

[11]That is, the disgorgement of profits.

15

We therefore decline GRC's request to overturn, in the name of insufficient evidence, the jury's verdict to the extent that it may award lost profit. We overrule GRC's fourth and final issue.

### III. CONCLUSION

We affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: January 28, 2021